Good Morning, we are all wedding. Our hearing just concluded the First Division is now over the session. Honorable inductees, please cancel to be ready to be interviewed in a few minutes. Good morning, president of the board. Good morning, precious young ьеu. Please come forward to the case and call the case. Case number 17-09-71 17-09-74 17-10-59 Salovey, are you ready to provide a follow-on? Good morning, will the attorneys who are going to argue please approach the bench, identify yourselves and let us know how much time you would like for your evidence. Please note that the microphone in front of you is for recording purposes only. It's not for amplification, so if you want to be heard speak up. Good morning, your honor. Assistant Public Defender Eileen Paul on behalf of the mother respondent, Ebony F. I would anticipate I would argue approximately 15 to 20 minutes and I would like some time, five minutes perhaps for rebuttal depending on what the other parties argue. Thank you. Good morning, I'm Assistant State's Attorney Nancy Kasicki on behalf of the people. We, the Public Guardian is also at Beli and we've discussed dividing our argument, dividing our time. I'll be arguing the due process issue and the statutory issue and I would ask for about 10 minutes for my part of the argument. Very well. I'm Assistant Public Guardian Mary Hayes for the children and I'll be addressing the sufficiency of the evidence and any questions regarding the certify filed by Ebony. How much time would you like? I'd like an equal amount of time to the State's Attorney. So we'd be dividing our time. Very well. Can I ask a question? Is one of you and which one of you is planning to address the evidentiary issues in terms of the hearsay evidence as to the mother's mental condition? Which one of you is planning to address that? I'm prepared to address those. Okay. Very well. Thank you. Good morning, your honors. Today I would like to focus my argument on issue one in my opening brief, subject of course to any questions your honors may have about the other issues which were raised. This court should reverse the adjudicatory finding of neglect where the trial court improperly admitted and relied upon irrelevant and prejudicial evidence about Ebony F's pursuit of voluntary intact family services. Prior to the adjudicatory hearing in this case, Ebony F's counsel filed a motion in limine which sought to bar the introduction of evidence about those voluntary intact services. It's about her refusal to participate in the intact services, correctly? That's what your concern was? The evidence that went in was both admissions she made and her progress, the substance of the services and evidence that she refused certain services. Okay, the admission was an admission that she'd used marijuana, not an admission that she was participating. There's nothing about her participation was not used against her in any way and you're not suggesting that it was, are you? Well, she made that admission to marijuana use all the way to a service, but that's just where she happened to be. As part of a substance abuse assessment, by accepting a substance abuse assessment. She had to admit that she had used marijuana. Yes, and that you cannot go to the service with the act of accepting is accepting that the whole service and the service in that case does involve admitting to. Okay, so you're saying her admission that she used marijuana was part and parcel of her voluntary participation in drug treatment. Is that what you're saying? Yes. And again, as you point out, there was also evidence that she refused certain services which were referred to her and a lot of testimony about all of this whole process. Okay, so let's talk about the refusal. How is that a violation of the statute? A refusal to use intact services? Because the statute does not refer only to acceptance of services. It also refers to referrals. Right, referrals. Because how, what foundation could you have for a refusal unless something was referred in the first place? It's like a question and an answer and an offer. But tell me the reason of what, if you need to do something to keep your children safe and you refuse to do that, how is that not relevant evidence? Whether it's referred or not. You need to go get a job. You need to get up in the morning. You need to do all sorts of things to keep your children safe and you don't do them. Your refusal to do them, whether you refer to them or not, is relevant. Is it not? Whether your children are neglected or abused? At adjudication, the only issue before the court is whether the child is neglected, not whether the parent was neglectful. I understand. If there's a condition in the home that is created by a problem the parent is not addressing, let's say there was evidence of drug use in the living room, for example, that would be acceptable for that clearly can be put into evidence and say here's this problem that's being caused. Okay. But under the statute at adjudication, the services by the parent are not admissible into evidence. They are not relevant for that. They're highly relevant at many, many other junctures in the Juvenile Court Act. For example, the reasonable efforts by the department shows up in many, many things. At disposition, the services- But I'm still not convinced that the refusal to do something that needs to be done is not evidence of neglect in the home. That's where the referral comes in because the need to be done is what? Determined by the DCFS worker who made the referral. I agree with you. There has to be evidence that needs to be done. But if that evidence is it needs to be done, for example, if marijuana use in the home is a problem and it's creating a neglectful home, so if it needs to be done and it's not done, how is that not relevant? It's the condition of the home. Here it is the mere fact that the parent declined a referral, particularly in this instance because in the intact services, the department has no authority to compel the parent to do that. The whole statutory scheme is designed for voluntary participation. But there's no promise to the parent. There's never made a promises there to the parent that your refusal will not be admissible against you. There's no promise like that. At other junctures, not at adjudication. And again, if there is a problem, if there is a tangible impact on the home because the parent is not pursuing a service that is that critical, then the agency may simply screen the case into court at that point and make those services compulsory. But then it's relevant, is it not? That's why we screened it in. The parent needed the service, the parent wouldn't get the service. That's why we screened it in. That's exactly what the state of GAL are saying happened at this stage. Well, that's if they screened it in. And the services from that point forward will be compulsory. These are prior services. But the relevant is what happened before you screened it in. That's the point of time you're looking at, before it gets screened in. What's relevant is the condition of the home, the current condition of the home. It is not, again, it is not where the parent is neglectful. It is where the child is neglected. I'll tell you the argument you make that I find far more compelling than this one and ask you to focus on it, which is the hearsay evidence that was used of her bipolar condition. And I don't believe there's any admissible evidence of that. And I believe that the standard is it has to be admissible evidence of the adjudicatory hearing. And I'd like you to address that because honestly, I'm far more troubled by that than the fact that the state and GAL relied on the fact that she refused services prior to the case being screened. Yes, Your Honor. And as we pointed out, that was hearsay about her mental condition. It was not presented, the state did not present any expert to opine that it had any impact on the home. Or that she even had that diagnosis. There was no admissible evidence was there that I'm aware of that she had that diagnosis. No, it was elicited through hearsay and through an admission by the parent herself. But she doesn't know. She doesn't understand. She's not a doctor. She's not a doctor. She's not an expert. She can't diagnose herself. And her statements, I was stressed out and didn't clean the house are not an assessment that her mental disorder prevented her from cleaning the house. These are, again, there was no foundation to show that she had any kind of mental condition that either would have created a problem in the home or even if services were admissible to show that they warranted the services. Okay. So if that was, I'm sorry. Yes, I have a brief question. You start off by saying you want us to reverse the trial court, correct? Yes, your honor. Okay. The trial court entered an order finding the mother was unable and unwilling to care for the children. So seven children were placed as wards of the court were placed under guardianship, correct? Yes. How long have they been in guardianship now? I have, and I would have to look at my briefs. I heard the adjudicatory hearing was held in May, 2016. I would have to go back and reference exactly what the dispositional, which are when I say we reverse on the evidentiary issues in our brief, which went to the adjudication, it would be reverse the adjudication. So that would be send it back, reverse and remand on the evidentiary issues for a new hearing. Of course, we also raised a sufficiency of the evidence argument, which would be an outright reversal. But with respect to issues one through three, that would be the appropriate remedy. I'd like to know how long have the children been under actual physical guardianship of the department? Away from the mother. I have a protective custody was taken in November, 2014. 2014. Okay. The disposition is March, 2017. Thank you. The children have been under guardianship for three years? They were taken into protective custody, yes, as of November, 2014. So what would be the effect of our reversal? It would be assuming it was on the first three issues and not on the sufficiency of the evidence would be to send the case back for a new adjudicatory hearing where they could have a hearing without all of the challenged evidence to see if they could still prove up their allegations. I wanna know what's going to happen to the physical, where will the children be physically from the entry of the reversal that you're requesting? At that point, it would go back to temporary custody. What's going to happen to the children in the meantime? That's the question. I believe they would still stay in custody unless there was an outright reversal where the state would need to file a new petition if they were able. But if there's a reversal and remand on the question of any of the evidence that went in adjudication, that would simply undo the adjudication to put the parties back to the pretrial stage that they were at before, whether there was a temporary custody order. Now, again, if circumstances have changed under the Juvenile Court Act, any of the parties may come in and file the appropriate motions for whatever the current status is. But otherwise, technically, that order would still stand and it would simply be a situation where the trial court would have to determine based on the proper evidence whether there was enough to show there was neglect in this household. And then at that point, depending on the outcome, the parties would proceed further, either further along the act or whatever it may be. You haven't answered my question. Are the children- I want to know where those children are going to be if we enter the street first. If we remanded back for a rehearing,  during dependency of the rehearing to the conclusion of the rehearing? What happens to the children? It would be the same status as an ordinary case where temporary custody is taken and then the children are placed. And where there's the whole process of the permanency hearings and all of that review, the case would stay in that status. They're going to remain where they are, basically. Well, they will remain where they are until there's a different outcome at the conclusion of the adjudicatory hearing. But for that, they would remain in temporary custody pending the further resolution. And again, it would be the trial court's decision based on whatever the current facts are regarding the children, exactly where they are placed. The concern would be, if you are successful, that the children would be returned back to the biological parents while the rehearing is being conducted. That would only happen if this court reversed outright and said that the evidence presented, that would be our issue four, if the evidence presented simply under, none of the allegations was sufficient. And any time the case is reversed and remanded, your honors need to decide whether the evidence was sufficient. That is a standard part of the remand for the purposes of remanding. Was there an offer? Do we need to reverse outright? Assuming your honors are not reversing outright, the children would stay in DCFS custody as that temporary custody order would still be in place even if the adjudication was undone. And in deciding that sufficiency, we consider also the challenged evidence, even if we find that challenged evidence to be improperly admitted, correct? If you rule, when the Apollo Court rules on an evidentiary error and says it needs to go back, I'm more familiar in the criminal context, but they do need to decide whether there's a point to sending it back because there are cases where, yes, the evidence went in improperly, but, oh, there wasn't even enough to send it to sustain the judgment anyway, so then they do need to consider that. Assuming you decided the first, that there was an evidentiary error that warranted a rehearing, but that the evidence was not so insufficient that it could not be sent back, then the children would stay in the custody. It would be analogous to any trial where he gets sent back and whatever pretrial rulings would still hold when the case gets sent back simply because the finding, the first three issues only ask to undo the adjudicatory finding. Again, we did not challenge the disposition. That is not before the court here. We've only challenged the sufficiency of the evidence on the adjudication and, of course, all of the evidentiary problems with the adjudication. Okay, so going back to if there is an evidentiary error, how do we decide whether that error was harmless or not? In deciding harmless error, the court needs to look at whether the issue was preserved because that affects the burden. Here in this instance, the trial attorney did file a motion in limine. This issue was preserved. I mean, all your issues. I don't think the state or GAL argues that any of your issues were not preserved. Right, and in fact, the burden shifts to the other parties then, the state, to make a harmless error argument. And as we pointed out in our reply, the state here did not make that argument. We would hold a forfeited argument on appeal for failure to raise it. In any event, even if this court were to excuse their forfeiture, the state cannot meet the standard of showing by a preponderance of the evidence that the improperly admitted evidence did not affect the outcome. And that is the standard that they need to meet. And we would, in support of our argument that the state cannot meet its burden of harmless error, we would point this court to the heavy reliance in the trial court's orders on all of these items, which we've argued are inadmissible. The trial court's order relied heavily on the in-text services, on the admissions by the mother and father to marijuana use, on the statements about the medical condition. That was a bulk of the trial court's both written and oral order, showing that the trial court did rely heavily on it. Was there a mental health assessment where she was found to have been bipolar? There was some evidence, again, it was hearsay that they did not have a, the state did not present any, you know, medical testimony about her condition. They did not call a doctor. They did not put that on. And again- They didn't even put in a doctor's report, did they? No. A written report by a doctor, they didn't put in anything directly from a specific doctor who diagnosed her in any way. Is that correct? That is correct. And there was no statement of any, again, there's no basis for how severe was her condition. Notwithstanding this bipolar disorder being proper evidence or being hearsay, the department's visit on November 2014 appears to have found the children in a condition or in premises that were pretty god-awful, correct? The court found that the home was in deplorable condition, no hot water, no stove, no gas. Family was using a space heater. There was dog feces and urine in the house. The children were dirty. Those facts come from an incident in 2013. Was that properly admitted? The caseworker may come in and testify to their observations of the home. Additionally, the mother during the time of June 2030 and December 2040 had been in jail, at least on these two occasions. Was that properly admitted? The fact that she was in jail was properly admitted, yes. We have not contested that, Your Honor. Okay. Based upon that, what is inconsistent about the trial court's finding that this was not a safe and nourishing, nurturing, excuse me, environment for these children? We have pointed out in our, in discussing the sufficiency of the evidence that there needs to be shown a nexus with respect to some of the conduct and harm to the children and with respect to the incarceration. Under that, under the case law, there needs to be a showing that the parent did not come up with a care plan for the children while they were incarcerated. Here, Ebony F. left the children with Meryl A., who was in the home, the father of the youngest girl and caretaker for the rest. That is not leaving your children abandoned while you were in jail. With respect to the allegations about the home, the ones that you have recited are from a visit in 2013, not the 2014, all of the evidence about the messy house. The record shows that those conditions had been corrected, that the house was cleaned. And there were some additional observations made in 2014. Again, some of the testimony, there was some impeachment of that caseworker in 2014, and the statements of the children themselves would have contradicted the assertions that it was too cold in the house or that they did not get enough to eat. There was a teacher's assistant who testified the children were well cared for. But I would also, besides the sufficiency, like to address that in the context of our previous discussion on the harmless error. Because the question is not whether there was some evidence that would have been sufficient to sustain the verdict. Now that may be the question on a remand, whether to remand the case. The question under harmless error is whether the tainted evidence affected the outcome. So it's, did the bad evidence overwhelm the sufficient evidence? Did it divert attention away? So it's really the impact of the evidence, it's not the quantity or sufficiency. And here, again, when you look at record, the sheer volume of improper evidence really diverted attention away from, was that one bedroom that had a space heater warm enough for the children? Were they really exhibiting signs of bad care? Instead, it was diverted to all of these other questions. And we saw that reflected in the arguments by the parties, where the state and guardian, the focus of their argument was mom isn't doing services, mom's a bipolar dog user. That was their whole thing. They didn't argue much about the conditions in the home on that day, and whether the children were harmed by those conditions. That is, the evidence here was not overwhelming, and the sheer volume and bulk of improper evidence that went in could have easily tipped the balance in this case toward a finding of neglect. And that is the question on the evidentiary issues that this court should consider. Whether that amount of improper evidence simply made a difference in this case, and had that been taken out, could there possibly have been a different outcome? Had the parents not been painted as uncooperative, people who didn't care enough to go to their services, for example, or people who had serious problems that were not documented in any of the medical testimony? Had those things not been presented to the trial court, is our argument that there could have been a different outcome in this case, and that it's exactly right. It should be reversed and remanded for a new adjudication. I'm sorry, I have one more question. I'm gonna go back to the mother's marijuana use. Your argument was that if she wanted to participate in drug services, she had to admit marijuana use to the caseworker. What's your support for that? That it's, as I read your brief, your brief was really about that no admission by the mother is admissible, which can't be the law. It can't be the law. 801 D2 applies to juvenile cases, just like it applies in all other cases. Admissions of a party are admissible, correct? It's, our argument was in the context of the representation that these intake family services are voluntary, that that creates a problem with the admission because the parent is told the service is voluntary, and that creates a due process problem with, of course, then, oh, it was voluntary. Oh, but you admitted because you voluntarily engaged in a program and made admissions that are necessary to participate. Where's the, that's my question. Where's the necessary to participate? Where's the evidence that her admission makes it, is necessary for her to participate? Is that in your brief somewhere? I don't recall. The evidence was that the admission was made during the assessment itself. The substance abuse assessment, apparently the caseworker was present with the counselor that, so that occurred during the assessment. And that is the part that we have attacked, the admissions that were made during the assessments and during the services. Okay. And in short, we would ask that this court reverse and remand this matter for the reasons I've stated here today. We also rely on the remaining issues raised in our brief, unless the court has any further questions. And again, I would simply like to reserve a few minutes for rebuttal if needed. Very well. And it's, the biological father has adopted your position, correct? Yes, I received a letter and a motion from that attorney. Very well. Thank you. Thank you, Your Honor. Ms. Kaczucki. Good morning again. Nancy Kaczucki on behalf of the people. The argument that Ebony is making that the juvenile court prohibits the juvenile court from admitting and relying on evidence about intact family services is leading this court down the wrong path to a result that the legislature never intended and it's one that conflicts with the entire statutory scheme under the Juvenile Court Act. So with that in mind, we need to back up and start again in looking at the statute that she's citing. Her argument relies on Section 210, which is entitled Temporary Custody Hearing and it's set forth in two clauses. The first clause says, acceptance of services shall not be considered in admission of any allegation in a petition made pursuant to this act. And the second clause says, nor may a referral of services be considered as evidence in any proceeding pursuant to this act, except where the issue is whether the department has made reasonable efforts. In an adjudication hearing, like the one that's at issue in this case, the people have to prove their abuse and neglect allegations via preponderance of the evidence. And in order to prove neglect, the people have to prove the facts that support the allegations in the petition. Ultimately, what the language of this section is saying, it confirms that the people can't shortcut or bootstrap their way out of presenting the underlying facts that support the petition just by showing that the children must be neglected because DCFS made a referral for services or that they must be neglected because the parents somehow admitted it because she accepted the services. So with that in mind, the provision sets forth two very specific and limited kinds of evidence that the people cannot rely on. We can't presume neglect simply because DCFS referred the parent to services or because the parent accepted the services that established, accepted the services. But what about the mother's argument that there's no way to participate in drug services, which are pretty commonly referred services, without admitting drug use? Right, well, in response to that, the court is probably familiar with a line of cases that established that a parent can be required to participate in effective therapy and that effective therapy, so even though the parent has a right not to incriminate themself under the Fifth Amendment, they can still be required to participate in effective therapy, even though the effective therapy may be impossible without admitting to abusing a child. And even though ineffective therapy may hurt their chances of having the child returned. So this isn't a criminal case. Do you have a case site? Yes, I have INRAE-AW-231-L2-92. That's from 2008. INRAE-LF, which is 306-ILF-3-748. And INRAE-Brandon-S, which is 331-ILF-3-757. Okay. So this isn't a criminal case and the concepts don't fit neatly into. But sometimes you have to make admissions in order to participate. Right, sometimes you do. And if you do, then that's not a constitutional issue. Right. So getting back to just the two clauses of the statute, you can't read them in isolation. And Ebony contends that evidence of refusal of services couldn't come in because the second clause about referrals bars admission of evidence about referrals, but it doesn't bar admission of evidence about referrals. It just, it doesn't say a referral of services is inadmissible. It just says it may not be considered as evidence. So that means it's the kind of thing that can come in not as substantive evidence to explain the course of conduct. Right. That's the point of bringing it up. Right, to explain the course of conduct. So we're not left wondering, well, what are we even talking about? I mean, in order to establish the course of conduct that the parent was asked to participate in services, you have to be able to say there's a referral and there's nothing in the statute that says you can't mention it. I mean, it's not in the statutory language. But it can't be considered. So you can mention it, but you can't consider it? It can't be considered as evidence. It's not evidence of neglect. Saying there was a referral doesn't mean that's evidence of neglect. It just establishes what you need to know in order to, you know, you need the beginning of the story to understand the end of the story. It just- How can you know the beginning of the story to understand the end of the story if you can't consider what the story's all about? You can consider what the story's all about. Well, you said the statute says you can't consider it. It says you can't, it's a referral of services. Sorry. It says a referral of services may not be considered as evidence in any proceeding under this act. So what's the point of bringing it up if it's not evidence? Well, it's pretty common to bring in evidence to establish a course of conduct. You just said it's evidence. Okay, I'm sorry. The statute says it's not evidence. Information to establish a course of conduct, not evidence. So, but if you look at the- Well, this is another statute enacted in the wisdom of the legislature. Apparently. But I just want to focus for a moment on the two separate clauses of the statute, which you can't read in isolation. The first clause says it puts a limit on the evidence about acceptance of services, saying that it can't be accepted as an admission. But that means the legislature plainly expected that the court could receive evidence about acceptance of services, but just couldn't use it in one particular way. So that means the second clause, I mean, Ebony has a very expansive interpretation of the second clause. There wouldn't be any need to forbid the court from considering acceptance of services as an admission, because the court would never hear about it because it couldn't hear about the referral. So the whole interpretation doesn't make sense. The plain language of the Juvenile Court Act as far as a referral of services never says that what happens after a referral can't be relevant. It doesn't fire the court from considering evidence about refusal of services or about progress in services or about admissions made during services, even about accepting services, as long as it's for something other than establishing an admission. Well, let's say that the respondent got referred and then refused services. Could that alone without any other evidence be grounds to make a finding of abuse and neglect? Wouldn't you have to establish, and the kids are unsupervised, they're in an unheated home, they're not being fed. Right. And then try to tie that into the fact that she's not getting, she, he is not getting the services that were recommended. Right. I mean, there has to be a point of the refusal. Right, under all circumstances, we have to establish the facts that underlie our allegations of neglect. So we have to establish there's a problem in this home. So in this case, the fact that, not the fact, the reference that she refused services, was that tied into the condition of the environment that the children were in? Yes, because of what happened during the investigations in both 2013 and 2014, there were problems with a dirty home and other issues in 2013, and there were problems with a freezing cold home and apparently no intention of finding a warm home for the children in 2014. So there were issues, they needed to be corrected. Were they tied into the refusal of services? Yes, because the services that they were referred to were intended to address the problems that had been observed in the home and we proved those facts. Okay. And can I just ask you before you go back, do you agree with the public defender that if we were to remand on an evidentiary basis, the children would remain in the homes that they're in because they would be back basically in a pre-adjudicatory temporary custody situation unless somebody filed a motion to change that? Yes. Short answer. Yes. So, and as further evidence- That's a good answer, a short answer. That's a good answer. Thank you. And in fact, as further evidence that the legislature never meant to bar consideration of intact family services, there's a passage later in section 210 directing that in a temporary custody hearing, if the court finds probable cause but determines that the parent's compliance with critical services mitigates the necessity for removal of the minor from the home, then the court can enter an order of protection. And that's a pretty clear indication that the juvenile court can consider services. I'm going to go back just a bit. It's been a while since I've been in juvenile court, but I was there. And my recollection is many cases come in beginning intact services, correct? Yes. And then when they get screened in, what you're really looking at is that period during the intact service while they're in place, correct? That's really what the court is presented with, correct? Yes. So if the statute met what the mother is saying it meant, you wouldn't even, how would you even examine that period? Right, right. And that, another point that I wanted to make also was that the two clauses in section 210 that we're discussing, neither of them distinguished between intact family services and the follow-up services that come later. So evidence about which follow-up services have been offered and what progress has been made in those services is the key evidence that goes into later hearings, into disposition, into permanency, into termination of parental rights. And if you adopt Ebony's reasoning and her interpretation, then it would fundamentally undermine just about every other kind of hearing that we have under the Juvenile Court Act. And it would prevent critically important information from reaching the judges who have to make decisions that keep children safe, that return them to their homes when they can, and that help them achieve permanency when that's not possible. So her interpretation of the statute is wrong and the decision to admit evidence of intact services was proper. Ebony also makes an argument that due process concerns come up if the court is allowed to consider her admission of marijuana use. Because she says she didn't make an intelligent and voluntary admission. She claims she wasn't informed that her conduct could be used as a binding admission that her children were neglected. First of all, the statutory allegation was neglect and not marijuana use. And admission to marijuana use is evidence of neglect, but it wasn't an admission to the allegation of neglect. She didn't admit to neglect. Wouldn't the use of marijuana have to be tied into its effect or observation by the children? I mean, what if she was in the park smoking marijuana and none of the kids knew about it? Would it be relevant then? Right, I think that may have something to do with the reason why the allegation is neglect, care necessary, neglect environment juries. And there's not an allegation of neglect because the parent used marijuana. So what was the point of marijuana use? It was, I mean, because parents who use substances to a great extent, it can affect their care of the children. It costs money, it diverts their attention. Was there any evidence that that marijuana use affected the care of the children? I don't know that there was evidence of that in this case. So, okay, this is the case we're talking about. Pardon me? This is the case we're talking about. Yes, that's true. So what's the point? Why bring it up? Why was it in the record in any event if it wasn't used to prove abuse or neglect? It can be used to prove abuse or neglect. It can be, but was it here? You just can't throw things in there for the heck of it. It was alleged in our petition. It can contribute to a parent's inability to care for their children. It can. We all agree it can. But did they tie that in to the facts of this case? Respectfully, I would like to defer that question to the public guardian who is addressing the manifest way of the evidence. Fair enough. Just returning for a minute to the due process voluntariness issue. Ebony's admission that she used marijuana was nothing like an unwarned custodial statement. She was not in custody, and her statements were not police statements. They were voluntary statements, and they supported the factual basis for the neglect allegation. Didn't prevent the court from hearing them. So this isn't a criminal case. The court should reject Ebony's request to find that due process requires a finding of voluntariness before evidence about intact services can be admitted. And I would like to note that Ebony isn't suggesting that a voluntariness requirement is a requirement in any other jurisdiction anywhere, and I think if it were, we would have seen that in the briefing. Finally, as to whether accepting evidence of Ebony's admission of marijuana is violated in section 210. The protection that's offered to parents under section 210 that stops the people from bootstrapping their case on the fact of a referral or the fact of accepted services, that's as far as the legislature went. They didn't want to discourage participation in services, but it was up to them to determine just how much they wanted to protect. And the statutory language wisely stops short of where Ebony wants it to go. If we follow Ebony's interpretation, the court wouldn't be able to hear evidence that a father getting services for substance abuse admitted to sexually abusing his child, or that the mother admitted that she had allowed her abusive boyfriend to move back into her home. So Ebony's approach prioritizes parents over children to an absurd degree, and it's completely contrary to the legislative intent. The Juvenile Court Act addresses the safety and welfare of minors, and nothing in the language the legislature used in section 210 suggests that information learned during services can't be disclosed to the court. So ultimately, when the statute is read with all of its terms considered together and not in isolation, and in light of the purpose of the Juvenile Court Act, Ebony's argument fails. And her due process argument also fails in light of the fact that her statements are revolutional and not in any way coerced or unknowing. So for all those reasons and the reasons that are brief, we're asking that you affirm. Thank you. Now, for the record, the biological mother of Amari is joining the state's position? I believe she adopted our brief, yes. Okay, thank you. Ms. Hayes. Good morning. I'm Assistant Public Guardian Mary Hayes for the eight children who are the subjects of the petitions in these consolidated appeals. This case is about eight children who had some basic needs that were not being met. And these revolve around safety. The problems that were evident in 2013 and 2014 show that it was a chronic problem over time. It wasn't just simply a situation of the boiler broke or the furnace broke and repairs were underway. The 2013 investigation revealed that there was no heat in the home. In 2014, on 11-18-2014, there was no heat in the home. There was space heaters. There was no heat in the home, correct? And occasionally, at some locations, the caseworker said space heaters are fine. In 2013, the Intech Family Service worker said that there were space heaters being used and it was sufficiently warm. And she cautioned the mother about the need to monitor with the children and with clothing and making sure that the conditions are safe. However, in 2014, when Investigator Cash went on 11-18-2014, that was when the father was there alone. The father was alone. The mother was in jail. She testified that there was no heat. She testified that Meryl told her that there was no heat. She testified that she observed a space heater in one of the rooms. She testified under cross-examination by Mr. Esler that she did not recall if the electricity was on and she did not recall if that space heater was working. A few pages after that, she testified there was no heat. And it was extremely cold. She said it felt colder in the home than it was outside. So the conditions were bad. And the hazards that were present in 2013 also deserve consideration. And the unhygienic problems with feces and urine, the animal feces in the room, that was in the 2013 investigation. And commendably, she began to participate in the Intech Family Services and she cleaned it all up, cleaned it up. And yet, the Intech Family Service workers said there was no heat, there was no gas, and this was a chronic problem and it was something that was not being addressed. So on November 18th, 2014, Investigator Cash had been going to the home. Initially, she thought, well, it appears that the minimal needs of the children are being met. She saw the children first in September. There was, at that time, Amari's half-sister, who was 16 years old, who, it was indicated, was sometimes assisting with the care of the children when Meryl and Ebony weren't present. But by October of 2014, Alexis, the 16-year-old, had run away, so those helping hands were gone. 13-year-old Amari was reported by the children on November 18th, 2014, to be taking care of them when Meryl and Ebony weren't present. In not good circumstances, and the youngest of these children, Zariah, was at that point eight months old, and so there were all eight of them. The oldest was 13. So clearly, there were problems in the home. The difficulty with the need for substance abuse treatment and the statement about marijuana use and her own statement regarding, the mother's statement in 2013 was that she was too depressed and too stressed to clean the home. So, clearly something wrong. The intact family service worker testified, and this is hearsay, and it should not have been argued for the truth of the matter asserted, but I don't think it's a problem that requires reversal because of the conditions in the home. Are you trying to make an argument that there's sufficient evidence, even without this inadmissible hearsay, to uphold the trial court's decision? And if so, where is that in your brief, and what cases do you like? Let's remember that there were documentary exhibits that were admitted. Those were all hearsay. There was no... Tell me the non-hearsay testimony that the mother's bipolar. But in the, the mother herself... She's not a doctor. All she's saying is, some doctor told me I was bipolar. She can't say she's bipolar. Where is the non-hearsay testimony that the mother is bipolar? That is what she said, and she said she herself said she was too stressed and too depressed. Stressed and depressed is not bipolar. Where is the non-hearsay testimony, because the adjudicatory order says bipolar. You guys argued bipolar. Where is the non-hearsay testimony that the mother is bipolar? And if it's not there, why does it not matter? Her statement was that she was too depressed. Not bipolar. So it's not there, but it's not an element of neglect. Neglect goes to the environment in the home and the care of the children. The mother's, I'm sorry, the court's adjudicatory order uses the word bipolar. You told the court, not you, because I assume it was you, somebody from your office told the court, we're not putting the suit for the truth-of-the-matter-asserted judges just to show course of conduct. Then you argue it in closing, and the court relies on it. Why does that not matter? Because I submit that there's sufficient evidence regarding the environment in the home and the care of the children to affirm the findings of neglect. With no, okay, and then where is that in your brief? And where do you argue that in your brief? On page 29, we did argue that no need exists to reverse the findings of neglect. Do you argue the evidence is otherwise sufficient, and we can just completely ignore the court's finding that the mother was bipolar? Is that what your argument is? Perhaps I should have spelled it out more clearly, but I do think that the testimony of both the 2013 investigator and the 2014 investigator established that there were clear problems in the home. There were basic needs of the children not being met. The reasons for that would be, provide helpful context and would help us understand why is it that the needs weren't being met? Why is it that efforts couldn't be made to avoid the need for removal of these children? It would be helpful. If we don't have that, we still do have that testimony. And I submit that's enough. I will add, though, that this court under Illinois Supreme Court Rule 366 has the same powers that the trial court has and can remand under 366. In a Juvenile Court Act case, in all proceedings, the court may direct the courts thereof so as to properly ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to this act. And this court has that same power that the trial court had. Perhaps it's true that more evidence should have been gathered about why it was that the conditions were so bad. They were bad enough that an investigator, Cash, felt like she couldn't safely leave these children there. I don't disagree with that. My concern that inadmissible evidence, the adjudicatory evidence hearing is supposed to be limited to admissible evidence, correct? Yes. As opposed to a dispositional hearing or a permanency hearing. And what appears to me to be inadmissible evidence was relied on by the trial court. Maybe it didn't need to be. Maybe it shouldn't have been. Maybe there was plenty of other evidence. How do we assess that? What do we do about that fact? Well, I think you can look to the testimony of Investigator Hankel and Investigator Cash and look at the circumstances in which these children were living. And there were eight of them. So we make our own factual finding? I mean, don't you have to show us it was harmless error in some way? Isn't there some burden on the state or on you to show us that this didn't matter? Well, I think that's what's happening here. I'm asking you to look at the investigator's testimony, the testimony of both investigators and also the Intech Family Service worker testified about the fact that there was no heat, the gas was off and the mother told her that she was working on that. She knew what she needed to do and she was gonna work on getting it turned back on. But then we come again to cold weather in November of 2014 and the heat's not working and the gas isn't on. And it would have been difficult, if not impossible, for these children to bathe under those circumstances. It was extremely cold in this home. And that accounts for their condition. This was not a child who got dirty outside playing. Every child was dirty in 2013. Every child at school in 2014 on November 18th was dirty and the children who Investigator Cash saw in the home were dirty and that's because of the conditions. So if we were to reverse for this evidentiary error, you could retry this case and put on all that evidence and stay away from the hearsay, correct? Only if your honors craft a very careful order instructing that that's what you are remanding it for. Because without a finding of neglect, you know, there's not jurisdiction to go to disposition. So- I understand that. It would be remanded for a new adjudicatory hearing and you could try to put on evidence that is admissible to show that there was neglect. Correct. And that's what would happen. Or the petitions could be amended and there could be additional, perhaps there'd be an allegation of dependency. But eight of these, there are eight children all together. So regarding Justice Harris's question, seven are in foster care in Illinois. The eighth, Amari, was returned to the care of his mother. Just very briefly regarding the 210 argument and I think Justice Mikva is correct. It can't possibly be that statements that a parent makes during an intact family service case could never be considered. Taken to its logical conclusion,  to torturing a child, even murdering a child, that those statements could never be admitted to protect other children and that can't possibly be what's intended. The purpose of the statute, the Juvenile Court Act and ANCRA and the DCFS Enabling Act are to protect children. But I just wanted to note briefly regarding 210 that there is a section under which a parent, after the temporary custody hearing, can come back in and do what Zivial did. What Amari's mother did say, I have participated in services and it's in the best interest of the child now that I've done those things for my child to be returned. And neither Ebony nor Meryl have done that. So your honors could use the powers that you have to remand and allow additional evidence to be presented if you feel you need to do so. I do think there's sufficient evidence to show that on November 18th, these children were neglected. So I don't think it's necessary. Your honors can decide whether you think it's necessary. And I would like to just briefly note that- One more second. Yes. But if we were to do that, we would say we would have no reason to defer to the trial court, correct? Because the trial court would allow, if we think that the bipolar evidence should not have come in, the diagnosis should not have come in because there was no admissible evidence, we wouldn't defer to the trial court. We would just make our own review of the evidence and say this is sufficient. Well, you're not conducting de novo review in this case except to the extent that it's a question of statutory interpretation and the claim is made about 210. So admission of evidence is reviewed for an abuse of discretion and the claim regarding the sufficiency of the evidence is of course reviewed for, does the manifest weight of the evidence support the findings of neglect? I submit they do. All right, we need to wrap up, please. So I just want to be clear that if there is a remand there would be a specific instruction that there could be additional evidence presented regarding neglect and any other allegations that could be made in a subsequent petition. Thank you. Thank you. For the spectators, this is what is commonly called the lawyer's 10 minutes, lawyer's 20 minutes. Can you explain it a little bit at this point? No. I mean, I would never, I would never. Well, Your Honor, I'm not sure I can adhere to only your yes and no answers, but I will try to be as brief as possible. The state argued some cases, not cited in their brief, about parents being required or compelled to participate in therapy. Again, I would just like to draw attention to the fact that the motion in the minute here involved the intact services. When intact voluntary services are offered, there's only been an indicated finding. That is simply a finding by the agency that there's some credible evidence. The services are not ordered in conjunction with later down the road with a temporary custody where there's actually a probable cause finding on the neglect or with an adjudication where there is an actual finding. And indeed, it is the absence of those court findings which make the intact services voluntary because there really has not been anything more than just an assessment by the agency. I think that's an important to consider that all of our arguments about the voluntary nature and that makes those intact services different. The parties discussed the course of conduct exception. I'd just like to briefly speak to that as Justice Mika pointed out, that does not warrant going to the substance of a matter or arguing something for the truth of the matter asserted. Indeed, the traditional parameters of that exception, which I'm more familiar with in the criminal context, would be simply, will the officer, did you speak to a witness? Yes, and then I went and did this. In this context, if that course of conduct had been properly admitted, it would simply be, for example, the intact worker, why did you go to the house? I went for intact services. End of story. Anything beyond that vastly exceeds any recognized exception for course of conduct and that is what happened here. The parties purported they were introducing evidence only for that exception, vastly exceeded its scope and argued it for a completely different purpose in closing and then, of course, the trial court did rely upon it for that improper purpose. I would also like to point out that there's been discussion here about all the various places where services are highly relevant under the Juvenile Court Act and we do not dispute that at all. It is not our argument and the motion in Limney here did not seek to bar evidence of these services at disposition. It did not seek to bar any other point to the proceedings. It merely pointed out that at adjudication where the only issue before the court is whether the child is neglected and not whether the parents were neglectful, that only in that context should that evidence be barred. So we are not arguing that section 210 bars everything. There's clearly numerous points in the Juvenile Court Act where the department's reasonable efforts are at stake or whether this provision of the statute itself specifically refers to services and the service plan. Clearly all that evidence would be admissible in that context. It's simply our argument it was not admissible here at adjudication for the purpose of showing whether the child in fact was neglected. Finally, I would just like to speak very briefly. In passing, there's been reference to the harmless error standard being the sufficiency of the evidence. That is not technically the case. We've cited it in our reply brief that under a proper harmless error analysis, the test is not the sufficiency of the evidence, but whether the result at trial would have been different had the error not occurred. And for harmless error, what is important is not the quantity or sufficiency of the evidence presented, but rather the impact which the improper evidence had upon the remaining evidence. And again, it is our contention that this was a burden that the state needed to show that they failed to make that argument and had waived it and had they made it under the facts of this case, they could not have prevailed in that burden. We thank you. Unless you have any other questions, I would conclude. Thank you very much. Thank you, your honor. The court would like to compliment the attorneys for their presentation this morning after their extensive briefing on the subject matter. Court will take this matter under advisement. Thank you.